HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALFREDO ACOSTA-GINORI, | Case No. 2:25-cv-02649-RAJ |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, *et al.*, | |
| Respondents. | |

## I.     INTRODUCTION

THIS MATTER comes before the Court on Petitioner Alfredo Acosta-Ginori's petition for writ of habeas corpus, Dkt. # 5. The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Mr. Acosta-Ginori's petition in part.

## II.     BACKGROUND

Mr. Acosta-Ginori is a citizen of Cuba currently detained at the Northwest Immigration Processing Center in Tacoma, Washington ("NWIPC"). Dkt. # 9 ¶ 4; Dkt. # 5 at 1. He entered the United States in 1980 and adjusted to lawful permanent resident status in 1989. Dkt. # 9 ¶¶ 5–6.

In 1991, Mr. Acosta-Ginori was convicted in California state court for burglary, robbery, and sexual battery. *Id.* ¶ 7; Dkt. # 5 at 3. In November 2002, after serving his criminal sentence, he was transferred into immigration custody. Dkt. # 5 at 3. On November 7, 2002, an immigration judge ordered his removal to Cuba. Dkt. # 9 ¶ 9. Then, in February 2003, after approximately three months in immigration custody, he was released on an order of supervision ("OSUP"). Dkt. # 5 at 3.

In the following years, Mr. Acosta-Ginori complied with his OSUP in part, but was arrested on three occasions for illegally crossing the U.S.-Mexico border after visiting family in Mexico. *Id.* at 3–4. The first arrest occurred in March 2008. *Id.* at 3; Dkt. # 9 ¶ 10–11. As a result of the offense, on April 4, 2007, an immigration judge again ordered Mr. Acosta-Ginori's removal to Cuba. Dkt. # 5 at 3; Dkt. # 9 ¶ 12. Following the order of removal, Mr. Acosta-Ginori spent approximately three months in immigration detention before being released on an OSUP on July 11, 2007. Dkt. # 5 at 4; Dkt. # 9 ¶ 13. The second arrest occurred in September 2011. Dkt. # 5 at 4; Dkt. # 9 ¶ 14. As a result of the offense, Mr. Acosta-Ginori's prior order of removal was reinstated. Dkt. # 9 ¶ 15. He was also convicted on a federal charge for illegal reentry and sentenced to 30 months of confinement. Dkt. # 5 at 4; Dkt. # 9 ¶ 16. After serving his federal sentence, Mr. Acosta-Ginori was released on an OSUP and did not spend time in immigration detention. Dkt. # 5 at 4. The third arrest occurred in August 2023. *Id.*; Dkt. # 9 ¶ 17. As a result, Mr. Acosta-Ginori was again convicted on a federal charge for illegal reentry and sentenced to six months of confinement. Dkt. # 5 at 4; Dkt. # 9 ¶¶ 17–18. In addition, in August 2024, Mr. Acosta-Ginori was convicted under California state law for failure to register as a sex offender and sentenced to two years of probation. Dkt. # 9 ¶ 20. He was not taken into immigration custody based on either the 2023 or 2024 offense. *See* Dkt. # 9 ¶¶ 17–20.

ORDER - 2

On August 18, 2025, Enforcement and Removal Operations ("ERO"), a division of Immigration and Customs Enforcement ("ICE"), arrested Mr. Acosta-Ginori at his workplace in California. Dkt. # 5 at 4; Dkt. # 9 ¶ 21. Shortly after, ICE transferred him to NWIPC, where he currently remains. Dkt. # 5 at 4; Dkt. # 9 ¶ 23.

There is little information in the record regarding the status of ICE's efforts to remove Mr. Acosta-Ginori to Cuba. Respondents submit a declaration from deportation officer Adrian Leyba. Dkt. # 9. In Mr. Leyba declaration, the only statements regarding the status of Mr. Acosta-Ginori's removal are as follows:

> On November 13, 2025, ERO emailed IOD-Cuba concerning Petitioner.
> On December 7, 2025, ERO emailed IOD-Cuba requesting a status update concerning Petitioner.

*Id.* ¶¶ 27–28. There is no indication that Cuba responded to these requests. Mr. Acosta-Ginori states he "has not received further information about the status of his removal to Cuba, nor has he been given notice that the government made a determination that he had become a flight risk or danger to the community." Dkt. # 5 at 4.

### III.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.   DISCUSSION

Mr. Acosta-Ginori seeks habeas relief on the following grounds: (1) his prolonged detention is unlawful under *Zadvydas*; (2) his re-detention violates procedural due

process; (3) Respondents failed to comply with 8 C.F.R. § 241.13; (4) his detention is punitive in violation of substantive due process; (5) removal to a third country without meaningful notice and opportunity to respond violates the Fifth Amendment, 8 U.S.C. § 1231, and the Convention Against Torture; and (6) removal to a third country is punitive in violation of the Fifth and Eight Amendments. *See generally* Dkt. # 5.  He seeks relief including an order (1) directing his immediate release; (2) prohibiting his re-detention absent notice and hearing; (3) prohibiting removal to a third country without reopened removal proceedings; and (4) prohibiting removal to a third country because it is unconstitutionally punitive. *Id.* at 26.

In their return memorandum, Respondents argue only that Mr. Acosta-Ginori's detention does not violate *Zadvydas* and his claim regarding third country removal is speculative and not ripe. *See generally* Dkt. # 8.  Notably, Respondents do not respond to Mr. Acosta-Ginori's procedural due process argument or his request for an order prohibiting his re-detention absent notice and opportunity to be heard.

For the reasons discussed below, the Court finds Mr. Acosta-Ginori's current detention is unlawful under *Zadvydas* and violates procedural due process.[1]  The Court further grants Mr. Acosta-Ginori's requested injunctive relief in part, as described below.

**A.    *Zadvydas***

8 U.S.C. § 1231, a provision of the Immigration and Nationality Act, governs the detention of noncitizens subject to a final order of removal.  Under this statute, once a removal order becomes administratively final, the government has 90 days—called the "removal period"—to remove the noncitizen from the United States.  8 U.S.C. § 1231(a)(1)(A).  During the removal period, the noncitizen "shall" be detained.  *Id.* §

---

[1] The Court declines to reach Mr. Acosta-Ginori's remaining arguments that his re-detention violates 8 C.F.R. § 241.13 and substantive due process.

ORDER - 4

1231(a)(2)(A). Once the removal period expires, the government "may" continue to detain certain noncitizens, including those subject to removal due to a criminal offense, or it may release the noncitizen on supervision. *Id.* § 1231(a)(6); *see also Zadvydas*, 533 U.S at 683.

The length that a noncitizen may be detained after expiration of the removal period is limited by "the Constitution's demands." *Zadvydas*, 533 U.S at 689. Specifically, the Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas*, the Supreme Court held that, when read in light of this constitutional mandate, post-removal period detention under § 1231(a)(6) must be limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States." *Zadvydas*, 533 U.S at 689.

*Zadvydas* established a framework to assess the reasonableness of post-removal period detention under 8 U.S.C. § 1231(a)(6). A total detention period of six months is presumptively reasonable. *Id.* at 701. After six months, a petitioner challenging his or her detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to come up with "evidence sufficient to rebut that showing." *Id.* If the government fails to rebut the showing, then the petitioner is entitled to habeas relief. *Id.* "For detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The Court finds that Mr. Acosta-Ginori is entitled to habeas relief under *Zadvydas*. First, Mr. Acosta-Ginori has been detained for more than six months since his most recent April 2007 order of removal, and his detention is therefore not presumptively reasonable. "[W]here a petitioner has been detained and released by ICE multiple times after a final

order of removal, 'the clock' on *Zadvydas's* six-month period of presumptive reasonability does not re-start with each successive detention." *Abubaka v. Bondi*, No. 25-cv-1889, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. Aug. 21, 2025) (rejecting government's argument that detention period must be consecutive). Here, Mr. Acosta-Ginori was detained for more than three months after the 2007 order of removal and for more than five months as of the date of this order, for a total of more than eight months. Dkt. # 5 at 3–4; Dkt. # 9 ¶¶ 10–13.[2] In their return, Respondents focus only on the fact that Mr. Acosta-Ginori's current detention is less than six months, but make no arguments why Mr. Acosta-Ginori's 2007 detention should not count toward *Zadvydas's* six-month period. Dkt. # 8 at 7. In the absence of relevant arguments to the contrary, the Court finds Mr. Acosta-Ginori's ongoing detention is not presumptively reasonable.

Second, Mr. Acosta-Ginori satisfies his burden of showing there is no significant likelihood of removal in the reasonable foreseeable future. Mr. Acosta-Ginori's first order of removal to Cuba was entered in 2002 (approximately 24 years ago) and his second was entered in 2007 (approximately 19 years ago). Dkt. # 9 ¶¶ 9, 12. In this time, the government has been unable to effectuate his removal to Cuba and has released him on an OSUP on multiple occasions. Dkt. # 5 at 3–4; Dkt. # 9 ¶ 13. Currently, Mr. Acosta-Ginori has been detained for more than five months and states he "has not received further information about the status of his removal to Cuba." Dkt. # 5 at 4.

Third, the government fails to rebut Mr. Acosta-Ginori's showing. Mr. Leyba's declaration states ERO "emailed IOD-Cuba concerning [Mr. Acosta-Ginori]" on

---

[2] In addition, Mr. Acosta-Ginori was detained for approximately three months in 2002 when his first order of removal was entered. In his reply, Mr. Acosta-Ginori does not argue this time should be counted toward *Zadvydas's* six-month period, and therefore the Court will not include this period in its analysis.

November 13, 2025 and again on December 7, 2025. Dkt. # 9 ¶ 27–28. It provides no information regarding why after detaining Mr. Acosta-Ginori on August 18, 2025, it apparently waited three months to contact Cuba regarding his removal. More significantly, it does not appear Cuba has responded to the emails or given any indication that it will accept Mr. Acosta-Ginori into the country.

Under these facts, the Court finds Mr. Acosta-Ginori's current detention is unlawful under *Zadvydas* and he is entitled to immediate release.

### B.    Procedural Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

ORDER - 7

*Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context.  *Id.* at 1207.

Applying the *Mathews* test, several courts in this district have found due process violations where the government—despite not having a valid travel document or other individualized basis for re-detention—re-detained noncitizens with a final order of removal without notice and a meaningful opportunity to respond.  *See Jimenez v. Bondi*, No. 25-cv-2167, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025); *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025); *Tran v. Bondi*. No. 25-cv-2335, 2025 WL 3725677, at *4–7 (W.D. Wash. Dec. 24, 2025); *Tzafir v. Bondi*, No. 25-cv-2067, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026).

The Court is persuaded by the above cases and similarly finds that Mr. Acosta-Ginori's re-detention under the particular circumstances of this case violates due process.  Under the first *Mathews* factor, Mr. Acosta-Ginori has a strong interest in remaining free from detention under conditions of release.  The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects.").  "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).  The same is true for Mr. Acosta-Ginori.

Under the second *Mathews* factor, the procedures used to re-detain Mr. Acosta-Ginori created a high risk of an erroneous deprivation of liberty interests, and there is

ORDER - 8

probable value in additional safeguards.³  Notably, ERO re-detained Mr. Acosta-Ginori on August 18, 2025 despite apparently having no concrete plan for effectuating his removal to Cuba.  *See* Dkt. # 9 ¶¶ 21, 27–28.  ERO did not contact Cuba until three months into Mr. Acosta-Ginori's detention, and to this day, has apparently received no response from Cuba.  *Id.*  As discussed above, this was an erroneous deprivation of Mr. Acosta-Ginori's liberty interests in violation of *Zadvydas*.  Respondents make no arguments in their return memorandum regarding why it was necessary to re-detain Mr. Acosta-Ginori under the circumstances with no pre-detention hearing, and indeed makes no argument that its procedures complied with procedural due process.  Thus, the Court finds the particular procedures used in this case created a high risk that in fact resulted in Mr. Acosta-Ginori's unlawful detention.  Additional safeguards, including notice and hearing before an immigration court, may have prevented this regrettable outcome.

Under the third *Mathews* factor, Respondents have not articulated what interest it has in re-detaining Mr. Acosta-Ginori, particularly given the unlikelihood of his removal to Cuba in the reasonably foreseeable future.  It is true that the government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "[p]reventing danger to the community."  *Zadvydas*, 533 U.S. at 690.  But here, the government saw fit to release Mr. Acosta-Ginori on an OSUP on multiple occasions.

---

³ 8 C.F.R. § 241.13(i)(3) sets forth certain procedures that must be followed upon the revocation of an OSUP.  The Court does not reach the question of whether Respondents complied with these procedures.  Regardless, "even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process."  *Gregorio Ordoñez v. Bondi*, No. 25-cv-2356, 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *see also Wana*, 2025 WL 3628634, at *5 ("Those meager procedures do not, however, provide the process due under the Fifth Amendment").

Dkt. # 5 at 3–4; Dkt. # 9 ¶ 13. Most recently, ICE did not detain Mr. Acosta-Ginori either as a result of his illegally crossing the U.S.-Mexico border in August 2023 or his conviction for failing to register as a sex offender in August 2024. Dkt. # 5 at 4; Dkt. # 9 ¶¶ 17–20. ICE's re-detention of Mr. Acosta-Ginori a year later, in August 2025, does not appear prompted by these events. Thus, there is no indication the government's interest required re-detaining Mr. Acosta-Ginori without notice and hearing. Moreover, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Tzafir*, 2026 WL 74088, at *4 (quoting *Carballo v. Andrews*, No. 25-978, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025)). Accordingly, the Court finds that the government's interest is overall low.

Taken together, all three *Mathews* factors favor Mr. Acosta-Ginori and support a finding that his re-detention violates procedural due process. This forms yet another basis to order his immediate release.

### C.  Additional Relief

Federal courts are authorized to dispose of habeas matters "as law and justice require." 28 U.S.C. § 2243. The statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). Rather, district courts "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

### 1. Future Re-Detention

Mr. Acosta-Ginori seeks an order prohibiting his future re-detention absent notice and a hearing before a neutral decisionmaker. Dkt. # 5 at 26.[4] Respondents do not respond to this request in their return memorandum. *See generally* Dkt. # 8.

The Court, in its discretion, finds that imposing conditions on any future re-detention of Mr. Acosta-Ginori is necessary to fully effectuate the intent of this order. The fact that Respondents have already unlawfully re-detained Mr. Acosta-Ginori once without due process or likelihood of removal in the reasonably foreseeable future raises serious concerns that, absent sufficient safeguards, the same thing may happen again. Respondents make no assurances that Mr. Acosta-Ginori will not be re-detained. Finally, Mr. Acosta-Ginori "seeks a pre-deprivation hearing; he can enforce that right only by bringing a challenge now, prior to being re-arrested." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

Accordingly, the Court finds it appropriate to prohibit re-detention of Mr. Acosta-Ginori absent notice and opportunity to be heard, as described more fully below. Several courts in this district have granted similar relief. *See Wana*, 2025 WL 3628634, at *6 (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same).

### 2. Third Country Removal

Mr. Acosta-Ginori also seeks an order prohibiting his removal to a third country without notice and a meaningful opportunity to respond in reopened removal

---

[4] In his reply, Mr. Acosta-Ginori states for the first time that he seeks an order prohibiting his re-detention absent certain conditions, including possession of a valid travel document. Dkt. # 11 at 7–8. The Court declines to grant relief requested for the first time on reply.

ORDER - 11

proceedings. Dkt. # 5 at 26. Respondents argue this issue is not ripe because "there is no concrete indication that removal to any third country will occur or is likely to occur." Dkt. # 8 at 8.

The Court finds the issue is ripe for review. Importantly, it appears Respondents are in fact attempting to remove Mr. Acosta-Ginori to a third country. A third country "refers to a country other than that specifically referenced in the order of removal." *Nguyen*, 796 F. Supp. 3d at 715. Mr. Acosta-Ginori's order of removal designates Cuba as the country of removal. Dkt. # 9 ¶¶ 9, 12. Mr. Acosta-Ginori states, however, that in November 2025, ICE informed him of "its intent to deport him to Mexico" and he "did not consent to deportation to Mexico." Dkt. # 5 at 8. Respondents tell a different story. Mr. Leyba states in his declaration that Mr. Acosta-Ginori "asked ERO to be removed to Cuba or Mexico." Dkt. # 9 ¶ 26. In either case, it appears there are active discussions about deporting Mr. Acosta-Ginori to Mexico, a third country. In addition, several other factors suggest the threat of third country removal, including that Mr. Acosta-Ginori's removal to Cuba appears unlikely, and Respondents do not state anywhere in the record that they will not attempt to remove him to a third country. Taken together, there is an imminent threat that Mr. Acosta-Ginori will face third country removal absent an injunction. *See Wana*, 2025 WL 3628634, at *5 (finding same).

Turning to the merits, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). "The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* at 1010. "[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the

ORDER - 12

country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country." *Nguyen*, 796 F. Supp. 3d at 727. As the court found in *Nguyen*, ICE's current third country removal policy "contravenes Ninth Circuit law." *Id.* at 728. Thus, the Court finds it is appropriate to grant Mr. Acosta-Ginori's requested relief to prevent the unlawful implementation of ICE's current third country removal policy.[5]

Finally, Mr. Acosta-Ginori asks for an order "that Respondents may not remove Petitioner to *any third country* because Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." Dkt. # 5 at 26 (emphasis added). The Court declines to find, based on the existing record, that removal to a third country would be unconstitutionally punitive in all instances. The relief granted above—notice and a meaningful opportunity to respond in reopened removal proceedings—will give Mr. Acosta-Ginori the ability to contest removal to a third country where he is likely to face imprisonment or other harm, and nothing in this order precludes him from pursuing other avenues of relief if necessary.

## V. CONCLUSION

For the forgoing reasons, the Court **GRANTS** in part Mr. Acosta-Ginori's petition for writ of habeas corpus, Dkt. # 5. The Court **ORDERS** that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

---

[5] The Court is ordering that Mr. Acosta-Ginori be provided with notice and an *opportunity* to be heard before an immigration judge prior to third country removal. If Mr. Acosta-Ginori voluntarily consents to removal to Mexico, as Respondents suggest, this order does not preclude him from waiving his right to a hearing.

(1) Shall immediately release Mr. Acosta-Ginori from custody under the conditions of his most recent order of supervision;

(2) Shall file with the Court a notice within 2 business days confirming Mr. Acosta-Ginori's release;

(3) Are prohibited from re-detaining Mr. Acosta-Ginori unless and until providing at least 10 days' notice and an opportunity to be heard before an immigration judge to determine whether re-detention is appropriate; and

(4) Are prohibited from removing or attempting to remove Mr. Acosta-Ginori to a country other than Cuba without at least 10 days' notice and a meaningful opportunity to be heard in reopened removal proceedings before an immigration judge.

Dated this 28th day of January, 2026.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 14